[Crim. No. 23195. First Dist., Div. Three. Nov. 23, 1981.]

In re CHARLES MARTIN, JR., on Habeas Corpus.

COUNSEL

Charles Martin, Jr., in pro. per., and Benjamin R. Winslow, under appointment by the Court of Appeal, and Winslow & Schmidt for Petitioner.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Ann K. Jensen and Nathan D. Mihara, Deputy Attorneys General, for Respondent.

OPINION

**WHITE, P. J.**—This petition, filed in pro. per. by an inmate, seeks good time/work time for a period of some eight months during which he was committed to California Rehabilitation Center under civil addict proceedings (Welf. & Inst. Code, § 3051). We have concluded that he is entitled to the credit he seeks.

The parties agree to the following statement of facts:

On July 21, 1980, petitioner pleaded guilty in Contra Costa County Superior Court to four counts of forgery (Pen. Code, § 470) (Super. Ct. No. 24059) and one count of burglary (Pen. Code, § 459) and possession of a deadly weapon (Pen. Code, § 12020) (Super. Ct. No. 24335).

On the same day the trial court instituted civil addict proceedings under Welfare and Institutions Code section 3051.

On July 25, 1980, petitioner was received by the California Department of Corrections, Northern Reception Center (hereafter NRC-CMF) and was then transferred to the California Rehabilitation Center (hereafter CRC) on August 1, 1980. Petitioner was ultimately found unsuitable for the civil addict program at CRC and was returned to Contra Costa County Superior Court on April 1, 1981, where he was sentenced to state prison for two years. He was received at NRC-CMF on April 9, 1981.

Petitioner prepared and filed an in pro. per. motion in the trial court on or about June 5, 1981, to obtain good time/work time credits for the period of time he spent at CRC. The trial court denied that motion on June 22, 1981. On August 6, 1981, petitioner filed a petition for writ of habeas corpus.

Petitioner contends that under equal protection principles he is entitled to the same good time/work time credits for time spent in CRC as he and other inmates are awarded for time in state prison or county facilities.

Penal Code sections 2931 and 4019 are the primary statutory authorities for credits for work performed and good conduct in penal institutions. Section 2931[1] covers conduct after sentence to state prison,

---

[1]Section 2931 provides in pertinent part: "(a) In any case in which an inmate was sentenced to the state prison pursuant to Section 1170, or if he committed a felony before July 1, 1977, and he would have been sentenced under Section 1170 if the felony had been committed after July 1, 1977, the Department of Corrections shall have the authority to reduce the term prescribed under such section by one-third for good behavior and participation consistent with subdivision (d) of Section 1170.2. A document shall be signed by a prison official and given to the inmate, at the time of compliance with Section 2930, outlining the conditions which the inmate shall meet to receive the credit. The conditions specified in such document may be modified upon any of the following: [¶] (1) Mutual consent of the prisoner and the Department of Corrections. [¶] (2) The transfer of the inmate from one institution to another. [¶] (3) The department's determination of the prisoner's lack of adaptability or success in a specific program or assignment. In such case the inmate shall be entitled to a hearing regarding the department's decision. [¶] (4) A change in custodial status. [¶] (b) Total possible good behavior and participation credit shall result in a four-month reduction for each eight months served in prison or in a reduction based on this ratio for any lesser period of time. Three months of this four-month reduction, or a reduction based on this ratio for any lesser period, shall be based upon forbearance from any or all of the following activities: ..."

whereas section 4019[2] covers conduct by certain prisoners confined in county jails or similar institutions. In *People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874], the California Supreme Court concluded that although neither section 4019 nor section 2931 provided conduct credit for presentence county jail time served by a felon sentenced to state prison, principles of equal protection required that such person also receive conduct credits.

In the same opinion, the *Sage* court disposed quickly of a contention that a felon should receive conduct credits for time during which he was committed to a state hospital for treatment as a mentally disordered sex offender (MDSO) pursuant to Welfare and Institutions Code section 6316. The court noted that section 4019 authorizes credit for certain prisoners confined in city or county jails, industrial farms or road camps but that it does not authorize conduct credit for time in "non-penal institutions such as state hospitals or the California Rehabilitation Center." (26 Cal.3d at pp. 502-503.)

The Attorney General argues in this case that *Sage* forecloses the credit petitioner seeks. But that portion of the *Sage* opinion reveals only what is obvious from the face of Penal Code section 4019: that it does not apply to time spent in CRC. The more troublesome issues are whether under Welfare and Institutions Code section 3201, subdivision

---

[2]Section 4019 provides in pertinent part: "(a) The provisions of this section shall apply in all of the following cases: [¶] (1) When a prisoner is confined in or committed to a county jail, industrial farm, or road camp, or any city jail, industrial farm, or road camp, including all days of custody from the date of arrest to the date on which the serving of the sentence commences, under a judgment of imprisonment, or a fine and imprisonment until the fine is paid in a criminal action or proceeding. [¶] (2) When a prisoner is confined in or committed to the county jail, industrial farm, or road camp or any city jail, industrial farm, or road camp as a condition of probation after suspension of imposition of a sentence or suspension of execution of sentence, in a criminal action or proceeding. [¶] (3) When a prisoner is confined in or committed to the county jail, industrial farm, or road camp or any city jail, industrial farm, or road camp for a definite period of time for contempt pursuant to a proceeding, other than a criminal action or proceeding. [¶] (b) Subject to the provisions of subdivision (d), for each six-day period in which a prisoner is committed to a facility as specified in this section, one day shall be deducted from the period of confinement unless it appears by the record that the prisoner has refused to satisfactorily perform labor as assigned by the sheriff, chief of police, or superintendent of an industrial farm or road camp. [¶] (c) For each six-day period in which a prisoner is committed to a facility as specified in this section, one day shall be deducted from his period of confinement unless it appears by the record that the prisoner has not satisfactorily complied with the reasonable rules and regulations established by the sheriff, chief of police, or superintendent of an industrial farm or road camp."

(c) or equal protection principles, conduct credits should be given for CRC time.

Welfare and Institutions Code section 3201, subdivision (c), effective July 29, 1980 (Stats. 1980, ch. 822, § 8)[3] provides, in essence, that a person committed as a civil addict under Welfare and Institutions Code section 3051 cannot be required to spend longer in confinement than he or she could have served on the underlying felony *with full credit for behavior and participation.* Thus it provides the civilly committed addict with the functional equivalent of a right to good time/work time credit (and, incidentally, appears to give him credit even when he does not "participate" or when his conduct might not have warranted it in another institution).

The amendment to Welfare and Institutions Code section 3201 was made prospective only by the Legislature (Stats. 1980, ch. 822, § 9). However, in *In re Morales* (1981) 115 Cal.App.3d 456 [171 Cal.Rptr. 425], Division One of the Fourth District (Brown (Gerald), P. J.) held that prospective application denied equal protection to those who committed their crimes before July 29, 1980. Hearing was denied by the Supreme Court.

The Attorney General argues, correctly, that Welfare and Institutions Code section 3201, subdivision (c) applies only to the maximum period of time a person can serve in a civil addict program and does not provide for conduct credits for one who has been excluded from the program as unsuitable (Welf. & Inst. Code, § 3053). However, application of Welfare and Institutions Code section 3201, subdivision (c) to persons who complete the addict treatment program and failure to provide

---

[3]Welfare and Institutions Code section 3201, subdivision (c) provides in pertinent part: "(c) Any person committed pursuant to Article 2 (commencing with Section 3050), whose execution of sentence in accordance with the provisions of Section 1170 of the Penal Code was suspended pending a commitment pursuant to Section 3051, who has spent, pursuant to this chapter, a period of time in confinement or in custody, excluding any time spent on outpatient status, equal to that which he or she would have otherwise spent in state prison had sentence been executed, including application of good behavior and participation credit provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code, shall, upon reaching such accumulation of time, be returned by the Director of Corrections to the court from which such person was committed, which court shall discharge him or her from the program and order him or her returned to the court which suspended execution of such person's sentence to state prison.... Upon the ordering of the execution of such sentence, the term imposed shall be deemed to have been served in full; however, such person may be subject to a period of parole, to include anti-narcotic testing, ..."

conduct credits for those who spend only a portion of their sentence time in the addict program creates two classes of prisoners. Members of the first class, by remaining in CRC for two-thirds of the maximum term they would have served in state prison, are effectively given full good time/work time credits for CRC confinement. Members of the second class, who may spend anywhere from one day to one day less than the members of the first class, receive no conduct credits for the time spent in CRC.

The Attorney General contends that the disparate treatment of the two classes is justified because: (1) time spent under a commitment to CRC is "treatment time," not "punishment" for the underlying offense; and (2) the CRC program is not set up to monitor an inmate's "good behavior" or "work participation" and there is no system whereby conduct credits could be subject to loss, as there is in a penal setting. He notes that the *Sage* court concluded that equal protection did not require conduct credits for MDSO time.

Shortly before its *Sage* decision, the Supreme Court decided *People v. Saffell* (1979) 25 Cal.3d 223 [157 Cal.Rptr. 897, 599 P.2d 92]. In *Saffell*, the defendant attacked both failure to give conduct credits to mentally disordered sex offenders and the automatic adoption of the "upper term" as the treatment period for an MDSO. The *Saffell* court found compelling reasons for the disparate treatment of MDSOs, those reasons centering around the distinctions between treatment and punishment, the availability of other methods to reward or penalize patients, and the administrative difficulties of setting up and operating a good time/work time system. In *Sage*, the court summarily rejected the equal protection argument by referring to its decision in *Saffell*. In other contexts the Supreme Court has noted the "essential parallelism" of the MDSO statutes and those covering commitment to CRC and has applied the same interpretations to the two laws. (See *People v. Thomas* (1977) 19 Cal.3d 630, 641 [139 Cal.Rptr. 594, 566 P.2d 228].)

What was said in *Sage* and *Saffell* has little impact upon the decision in this case, however, because of adoption of Welfare and Institutions Code section 3201, subdivision (c). The *Sage* and *Saffell* decisions were rendered in reliance upon a legislative scheme in which MDSO patients were provided no species of good time/work time credits, and in which the courts were specifically advised to ignore conduct credits when setting the MDSO treatment term. (Welf. & Inst. Code, § 6316.1, subd. (a).)

The Attorney General argues that neither the distinction between rehabilitation and punishment nor the administrative difficulties are altered by adoption of section 3201, subdivision (c). He asserts that the new statute does not provide conduct credits, but merely sets the maximum treatment time for an addict by reference to the term he would serve in prison. It is true that section 3201, subdivision (c) does not change the nature of the CRC program or provide an administratively convenient way to apply the prison conduct credit system to CRC inmates. It is also true that on its face the section does not provide conduct credits but merely prescribes a method for setting the maximum treatment time for a CRC inmate. However, by concentrating on the literal meaning of the new legislation, the Attorney General ignores its impact upon the situation of one committed to CRC.

In *Saffell*, the court permitted longer treatment of MDSOs because treatment was not equivalent to punishment. It rejected the notion of good time/work time incentives because it found other incentives and disincentives, administrative difficulties in applying credits, and the absence of the kind of work programs available in state prisons. In adopting Welfare and Institutions Code section 3201, subdivision (c), the Legislature has determined that the treatment period should be equivalent to the potential punishment and has established an administratively convenient method of providing credit. Thus, the justifications found persuasive in *Saffell* cannot be asserted in relation to CRC credits. The Legislature does not intend an addict to be treated for longer than he could be imprisoned and it intends the "credit" to apply irrespective of the nature of his conduct while in CRC.

The classification created by Welfare and Institutions Code section 3201, subdivision (c) is not between addicts and nonaddicts who committed the same crimes; it is between CRC inmates who stay with the program and those who are returned for state prison sentencing. In order to justify this classification, the Attorney General must present some compelling reason for treating those amenable to CRC treatment differently from those who are not amenable. No reason for this distinction is asserted in the Attorney General's brief and none was presented at oral argument. We can conceive of no sound justification. ■ Therefore, we conclude that equal protection requires that conduct credits be afforded not only for those who successfully complete CRC terms, but also those who spend only a portion of their terms under

commitment to CRC.[4] Petitioner, as one who was excluded from CRC, was entitled to good time/work time for his CRC time on the same basis as any other CRC committed prisoner.

The Superior Court of Contra Costa County is ordered, at its earliest opportunity, to amend petitioner's abstract of judgment to provide good time/work time credits for the period spent at CRC and to forward a copy of the amended abstract to the Department of Corrections for correction of petitioner's commitment records. The determination of whether petitioner is entitled to immediate release will be made forthwith by the Department of Corrections upon receipt of the amended abstract of judgment.

Feinberg, J., and Stern, J.,* concurred.

A petition for a rehearing was denied December 23, 1981, and the opinion was modified to read as printed above. Feinberg, J., was of the opinion that the petition should be granted.

---

[4]Our conclusion is not altered by the California Supreme Court's recent decisions in *People* v. *Austin* (1981) 30 Cal.3d 155 [178 Cal.Rptr. 312, 636 P.2d 1], and *In re Ricky·H.* (1981) 30 Cal.3d 176 [178 Cal.Rptr. 324, 636 P.2d 13]. Those decisions involved the difference in treatment between state prison inmates and those committed to California Youth Authority. The latter are not entitled to conduct and participation credits under the new decisions. The *Austin* court explained in detail why the differently treated classes were not similarly situated, focusing upon the rehabilitative purpose of.the California Youth Authority and upon the role conduct already plays in that setting. In the case at bench the disfavored class and the favored class are similarly situated in all respects except that those in the disfavored class are returned to state prison before expiration of their terms. We find no justification for treating them more harshly than either those not returned or those never sent to CRC.

*Assigned by the Chairperson of the Judicial Council.