[No. A065655. First Dist., Div. Three. Feb. 28, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
JEFFREY SCOTT EDDY, Defendant and Appellant.

COUNSEL

Roxanne J. Epstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Christopher W. Grove, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CHIN, P. J.—Appellant Jeffrey Scott Eddy was originally sentenced to three years in state prison for possessing a controlled substance for sale (Health & Saf. Code, § 11378) and to a one-year consecutive term for vehicle theft (Veh. Code, § 10851). The crimes were committed in 1992 and 1991, respectively. The court subsequently suspended criminal proceedings and committed appellant to the California Rehabilitation Center (CRC). Appellant was excluded from CRC[1] after he was in that institution for 504 days. The trial court then reinstated criminal proceedings and imposed the stayed four-year prison term. Although the trial court granted credit for the actual time appellant spent at CRC, it did not grant appellant good behavior

---

[1] Appellant was excluded from CRC because he threatened to burn down the housing unit if he was not transferred.

and participation credit (Pen. Code, § 2931)[2] or worktime credit (§ 2933) for that period. On appeal, appellant contends he should have been awarded good behavior and participation credit or worktime credit for the time he spent at CRC. We disagree and affirm the judgment.

## I. Discussion

### A. *Existing Case Law*

The issue appellant raises in this appeal was recently considered by Division Two of this district. *People* v. *Madison* (1993) 17 Cal.App.4th 783 [22 Cal.Rptr.2d 157] held that CRC committees who committed their offenses on or after January 1, 1983, are not entitled to "good behavior and participation" credit under section 2931 or to "worktime" credit under section 2933. Consequently, if they are later excluded from CRC and committed to prison, those inmates only receive credit for the time they actually served at CRC, and do not receive conduct credit.[3] (*People* v. *Madison, supra,* 17 Cal.App.4th at pp. 787, 789-790.)

To understand *Madison*'s analysis, it is helpful to sketch the recent history of conduct credit in California's penal system. The Penal Code provides that state prisoners who are sentenced for crimes *committed before* January 1, 1983, may earn "good behavior and participation credit" equal to one-third of their sentence. (§ 2931, subds. (b), (d).) However, in 1982, the Legislature enacted new legislation—section 2933—which applies to prisoners sentenced for crimes committed on or after January 1, 1983.[4] (3 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Punishment for Crime, §§ 1557, 1558, pp. 1859-1861.) ■ Under the new legislation, credit is granted *only* for participation in approved work, training, or education programs, and is not granted for mere "good behavior." At the time pertinent to this appeal, this so-called "worktime" (as opposed to "good behavior and participation credit") could result in a 50 percent reduction in the sentence served. (3 Witkin & Epstein, Cal. Criminal Law, Punishment for Crime, *supra,* § 1558, at p. 1861; § 2933, subd. (a).) This change from the "good behavior and participation credit" system of section 2931 to the "worktime" system of section 2933 is key to understanding the issue on appeal.

In *People* v. *Madison, supra,* 17 Cal.App.4th 783, the court held that CRC committees who commit their crimes on or after January 1, 1983, are not

---

[2]Subsequent statutory references are to the Penal Code unless otherwise noted.

[3]We use the term "conduct credit" to refer generically to the notion that a prisoner may receive a reduced sentence for good behavior or participation; we use the term "good behavior and participation credit" to refer to the *specific* conduct credit system established under section 2931, and the term "worktime" to refer to the specific system outlined in section 2933.

[4]Prisoners who committed their crimes before January 1, 1983, but are sentenced after that date, may elect to come under the provisions of section 2933. (§ 2934.)

entitled to "good behavior and participation" credit under section 2931. The court reached this conclusion because section 2931, subdivision (d), specifically provides that "[t]his section" shall not apply to any person whose crime was committed after that date. The court noted that Welfare and Institutions Code section 3201, subdivision (c), provides that CRC committees may not be confined for a period exceeding that which they *would* have spent in prison had sentence been executed, "including application of good behavior and participation credit provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code [hereafter article 2.5 of the Penal Code] . . . ." (Welf. & Inst. Code, § 3201, subd. (c); *People* v. *Madison, supra,* 17 Cal.App.4th at pp. 787-788.)[5] The *Madison* court observed that the pertinent Welfare and Institutions Code section refers specifically to " 'good behavior and participation credit' "; accordingly, "the conduct credit that must be allowed . . . for time spent at CRC is that amount of credit provided for in section 2931." (*People* v. *Madison, supra,* 17 Cal.App.4th at p. 788.) Because good behavior and participation credit is not provided to persons who committed their crimes on or after January 1, 1983, CRC committees who fall into this category are not entitled to section 2931 credit.

The defendant in *Madison* also contended that, even if he was not entitled to section 2931 credit, he was entitled to "worktime" credit under section 2933. The court disagreed, relying on prior cases which held that section 2933 "worktime" credit is not available for time spent at CRC. (*People* v. *Madison, supra,* 17 Cal.App.4th at pp. 788-789, citing *People* v. *Miller* (1991) 233 Cal.App.3d 1551 [285 Cal.Rptr. 410]; *People* v. *Williams* (1991) 232 Cal.App.3d 1643 [284 Cal.Rptr. 241]; *In re Mabie* (1984) 159 Cal.App.3d 301 [205 Cal.Rptr. 528].) In *Mabie,* the court held that a defendant who was then currently committed to CRC was not entitled to "worktime" credit under section 2933. The *Mabie* court reasoned that the Legislature's failure to mention CRC committees in section 2933 compelled a conclusion that it did not intend to provide worktime credit to such individuals: "Interpreting a later amendment of another section which authorizes *worktime* credit as included in the good behavior and participation credit would obfuscate the distinction between two separate concepts." (*In re Mabie, supra,* 159 Cal.App.3d at p. 306, original italics.) Moreover, there was no corresponding amendment of Welfare and Institutions Code section 3201 authorizing section 2933 worktime credit for CRC inmates. The court

---

[5]Prior to the substitution of the "worktime" credit system for the "good behavior and participation" credit system, case law held that equal protection required that conduct credit be afforded not only to those who successfully completed CRC, but also to those who spent only part of their term at CRC. (*In re Martin* (1981) 125 Cal.App.3d 896, 902-903 [178 Cal.Rptr. 445].)

cited the maxim that the Legislature's failure to change a statute in a particular respect when the subject is before it is indicative of an intent to leave the law unchanged. (*In re Mabie, supra*, 159 Cal.App.3d at pp. 306-307.) Consequently, the court concluded that ". . . the Legislature has chosen *not* to provide section 2933 worktime credits to CRC committees." (*In re Mabie, supra*, 159 Cal.App.3d at p. 307, original italics.)

In addition, *Mabie* held that the Legislature did not violate principles of equal protection when it granted worktime credit to prison inmates while it denied that credit to CRC committees. The court *assumed* that CRC committees and prison inmates were "similarly situated" for equal protection purposes, but nevertheless found the state had a compelling interest which justified the disparate treatment. (*In re Mabie, supra*, 159 Cal.App.3d at pp. 307-308.) In particular, the court found that worktime credit was awarded to prison inmates to instill a "work ethic" that increases the possibility that the prison inmates will become productive members of society after their release. However, the *Mabie* court observed that "[t]he legislative purpose of instilling the work ethic in state prison inmates has little, if any, applicability to the CRC committee. 'Petitioner is in the CRC program because of his narcotics addiction and its result not only to him but to the rest of society. . . . Petitioner needs and society demands particularized treatment of him because of that condition.' [Citation.] Such treatment provides the most likely prospect for petitioner's successful reentry into society. The compelling state interest is manifest by the importance of treatment for a narcotics addict. Theoretically, successful treatment would obviate the need for an addict to commit crime to support his habit. Since addiction is the root of the problem, the Legislature apparently determined that worktime credit would not foster effective treatment. This determination forms the basis of the necessary compelling state interest." (*In re Mabie, supra*, 159 Cal.App.3d at p. 308.)

*Mabie*'s statutory and equal protection analysis has been extended to cases where, as in the present one, the defendant was excluded from CRC and sentenced to prison. (*People* v. *Madison, supra*, 17 Cal.App.4th at p. 789; *People* v. *Miller, supra*, 233 Cal.App.3d at pp. 1553, 1554-1556.)

### B. *Appellant's Critique of Existing Case Law*

Normally, it would be enough to cite to *People* v. *Madison, supra*, 17 Cal.App.4th 783, *People* v. *Miller, supra*, 233 Cal.App.3d 1551, and *In re*

*Mabie, supra,* 159 Cal.App.3d 301,[6] to dispose of the issues in this case. However, appellant presents a detailed critique of those cases, which we believe warrants a response.

### 1) *Good Behavior and Participation Credit*

Appellant first contends that the *Madison* court failed to follow established rules of statutory construction when it concluded that CRC committees are not entitled to good behavior and participation credit for crimes committed after 1982. We reject this argument.

Appellant claims he is entitled to the "good behavior and participation credit" provided by section 2931 because Welfare and Institutions Code section 3201 incorporates section 2931 as it existed in 1980, when section 3201 was first amended to make specific reference to the conduct credit system found in article 2.5 of the Penal Code. (See Stats. 1980, ch. 822, § 8, p. 2589.) In other words, he contends that the Legislature intended that CRC committees would receive section 2931 credit as fixed in 1980, regardless of any subsequent amendments to section 2931 or related statues. We disagree.

In pertinent part, Welfare and Institutions Code section 3201, subdivision (c), provides that a CRC committee is subject to a maximum period of confinement "equal to that which he or she would have otherwise spent in state prison had sentence been executed, including application of good behavior and participation credit provisions of [article 2.5 of the Penal Code] . . . ."

Appellant relies on the following maxim of statutory construction: " '. . . where a statute adopts by specific reference the provisions of another statute, regulation, or ordinance, such provisions are incorporated in the form in which they exist at the time of the reference and not as subsequently modified . . . . [Citations.]' " (*Palermo* v. *Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 58-59 [195 P.2d 1]; *In re Jovan B.* (1993) 6 Cal.4th 801, 816 [25 Cal.Rptr.2d 428, 863 P.2d 673].)

However, there is a converse rule, which we believe is more appropriate here. Specifically, " '. . . where the reference is general instead of specific, such as . . . *to a system or body of laws* . . . , the referring statute takes the law or laws referred to not only in their contemporary form, *but also as they may be changed from time to time* . . . . [Citations.]' " (*Palermo* v. *Stockton*

---

[6]The People also cited *People* v. *McEver* (1994) 30 Cal.App.4th 1045 [30 Cal.Rptr.2d 732]. However, the Supreme Court subsequently granted review in that case on October 4, 1994 (S040986).

*Theatres, Inc., supra*, 32 Cal.2d at p. 59, italics added; *In re Jovan B., supra*, 6 Cal.4th at p. 816.) Here, Welfare and Institutions Code section 3201 refers to " 'a system or body of laws,' " namely, article 2.5 of the Penal Code, and not to a specific statute or ordinance. Consequently, Welfare and Institutions Code section 3201 adopted the pertinent system of laws not only in its contemporary form, but also as it might be amended in the future. (See *In re Jovan B., supra*, 6 Cal.4th at p. 819.) Consequently, *Madison*'s basic statutory analysis is sound.

Appellant cites *In re Oluwa* (1989) 207 Cal.App.3d 439 [255 Cal.Rptr. 35] for the proposition that reference to article 2.5 of the Penal Code is a reference to a specific statute rather than to a body or system of laws. However, as our Supreme Court explained in *In re Jovan B.,* the *Oluwa* court relied on indicia of legislative intent *other* than the plain language of the statute.[7] (*In re Jovan B., supra*, 6 Cal.4th at pp. 816-817, fn. 10.) Because there are no indicia of legislative intent in this case that contradict our interpretation of the plain language of Welfare and Institutions Code section 3201, *Oluwa* is not persuasive authority on this point.

### 2) *Worktime Credit Under Section 2933*

■ Appellant next contends he is entitled to *one-for-one* worktime credit under section 2933. This contention has been repeatedly rejected by the case law, and appellant has not offered any argument why those cases are wrong on this point. (See *People v. Madison, supra*, 17 Cal.App.4th at pp. 788-789; *People v. Miller, supra*, 233 Cal.App.3d at pp. 1553, 1554-1556; *In re Mabie, supra*, 159 Cal.App.3d at pp. 306-309.) Consequently, we conclude, without further analysis, that appellant is not entitled to *one-for-one* worktime credit under section 2933.

However, appellant makes an additional argument which the case law has not specifically addressed. In particular, he contends that even if he is not

---

[7]In *Jovan B.,* the Supreme Court stated that *Oluwa* "considered the effect of . . . section 190, as rewritten by the 1978 Briggs Initiative, on prison term custody credits added to the code in 1982. The 1978 initiative statute allowed reduction of the minimum prison term for second degree murder under [article 2.5 of the Penal Code]. [Citation.] When the initiative was adopted, the Penal Code article at issue . . . granted prisoners credit up to one-third their minimum terms. Citing *Palermo, supra*, the court in *Oluwa* concluded that further credits added to the article in 1982 could not be applied to second degree murderers. The *Oluwa* court stressed the legislative analysis accompanying the 1978 initiative, which advised voters that murderers sentenced to prison terms of 15 years to life 'would have to serve a minimum of 10 years . . . .' [Citation.] Thus, the Court of Appeal reasoned, 'the electorate clearly intended service of 10 calendar years by a second-degree murderer before parole consideration,' and the Legislature could not alter that scheme without voter approval. [Citation.]" (*In re Jovan B., supra*, 6 Cal.4th at p. 816-817, fn. 10.)

entitled to one-for-one worktime credit, he is entitled to the one-for-two credit which is available to prisoners who are "willing to participate in a full-time credit qualifying [worktime] assignment but who [are] either not assigned . . . or [are] assigned to a program for less than full time . . . ." (§ 2933, subd. (a).) We reject this argument.

Section 2933, subdivision (a), provides in pertinent part: "It is the intent of the Legislature that persons convicted of a crime *and sentenced to the state prison, under Section 1170*, serve the entire sentence imposed by the court, except for a reduction in the time served in the custody of the Director of Corrections for performance in work, training or education programs established by the Director of Corrections. . . . [Worktime credit shall be awarded on a one-for-one basis for prisoners who actually participate in full-time qualifying programs.] . . . [E]very *prisoner* willing to participate in a full-time credit qualifying assignment but who is either not assigned to a full-time assignment or is assigned to a program for less than full time, shall receive no less credit than is provided under Section 2931 [one day of credit for every two days served]." (Italics added; see § 2930, subd. (b).)

Appellant contends that since he was willing to participate in a full-time work program while at CRC, but was not assigned to such a program, he is entitled to "no less credit than is provided under Section 2931"; i.e., one day of credit for every two days served at CRC. However, section 2933 is manifestly *not* applicable to CRC committees. ■ As the court observed in *People* v. *Miller, supra*, 233 Cal.App.3d 1551, ". . . the Legislature's omission from section 2933 of *any* mention of CRC committees suggests it did not intend to provide worktime credit for such individuals." (*People* v. *Miller, supra*, 233 Cal.App.3d at p. 1554, italics added.) This reasoning applies with equal force to section 2933's provision which grants one-for-two credit to prisoners who are willing but unable to work in a full-time credit program (what we will call "quasi-worktime credit"). Like true worktime credit, such "quasi-worktime credit" is available to *prisoners* who are sentenced under section 1170; it is not available to CRC *committees* who are committed under Welfare and Institutions Code section 3051. Moreover, the Legislature's failure to amend Welfare and Institutions Code section 3201 to grant "quasi-worktime credit" to CRC committees indicates that it chose not to provide such credit to CRC committees. (*In re Mabie, supra*, 159 Cal.App.3d at pp. 306-307.)

■ Finally, appellant contends that if the Legislature intended to deny CRC committees one-for-two "quasi-worktime credit," then this denial amounts to a violation of equal protection, since that credit *is* awarded to prison inmates. Again, we disagree.

The cases which have determined that the Legislature may deny section 2933 one-for-one worktime credit to CRC committees without violating equal protection have all *assumed, without deciding,* that CRC committees and state prison inmates are "similarly situated" for equal protection purposes. (*People* v. *Madison, supra,* 17 Cal.App.4th at pp. 788-789; *People* v. *Miller, supra,* 233 Cal.App.3d at pp. 1554-1555; *People* v. *Williams, supra,* 232 Cal.App.3d at pp. 1648-1649; *In re Mabie, supra,* 159 Cal.App.3d at p. 307.) Instead, those cases determined that, even if CRC committees and prison inmates are similarly situated, a compelling state interest justifies their disparate treatment vis-à-vis worktime credit. (*People* v. *Madison, supra,* 17 Cal.App.4th at p. 789; *People* v. *Miller, supra,* 233 Cal.App.3d at pp. 1554-1555; *People* v. *Williams, supra,* 232 Cal.App.3d at pp. 1648-1649; *In re Mabie, supra,* 159 Cal.App.3d at p. 308.) In each of these cases, the courts have essentially relied on *Mabie*'s analysis of the issue. *Mabie* reasoned that, unlike "good behavior and participation" credit, which was awarded *automatically,* prisoners had to earn worktime credit. Thus, according to *Mabie,* the Legislature's purpose in creating the worktime credit system was to instill a work ethic in prison inmates. *Mabie* concluded that this goal was not appropriate in CRC commitments, since those sent to CRC are committed for treatment of narcotics addiction, not punishment. Consequently, the Legislature determined "that worktime credit would not foster effective treatment," and this determination formed the "basis" of the necessary compelling interest. (*In re Mabie, supra,* 159 Cal.App.3d at p. 308.)

Appellant contends that this same analysis cannot be applied to the "quasi-worktime credit" provided by section 2933 because that credit is awarded *automatically* to prisoners who are willing but unable to work. Since prisoners are not required to earn section 2933 "quasi-worktime credit," appellant maintains that the award of that credit is not related to the state's goal of instilling a work ethic. He therefore concludes that the state has no "compelling interest" in denying that credit to CRC committees.

We believe appellant has missed the mark with this argument. The compelling interest *Mabie* identified is *not* the need to instill the work ethic in prison inmates, but is instead the need to foster effective treatment of narcotics addicts. The *Mabie* court believed awarding worktime credit would interfere with this compelling interest. (*In re Mabie, supra,* 159 Cal.App.3d at p. 308.)

More to the point, however, we believe that CRC committees are *not* similarly situated to prison inmates for equal protection purposes, and consequently, we are unwilling to presume that they are. ■ "The constitutional guaranty of equal protection of the laws has been judicially

defined to mean that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes *in like circumstances* in their lives, liberty and property and in their pursuit of happiness. [Citations.] The concept recognizes that persons similarly situated with respect to the legitimate purpose of the law receive like treatment, but it does not . . . require absolute equality. [Citations.]" (*People* v. *Romo* (1975) 14 Cal.3d 189, 196 [121 Cal.Rptr. 111, 534 P.2d 1015], quoted in *People* v. *Heard* (1993) 18 Cal.App.4th 1025, 1029 [22 Cal.Rptr.2d 684].) To prevail on an equal protection claim, the proponent must show that the state has imposed a classification which affects two or more *similarly situated groups*. (*People* v. *Jacobs* (1992) 6 Cal.App.4th 101, 103 [7 Cal.Rptr.2d 781].) The constitutional guaranty of equal protection does not mandate uniform laws with respect to different persons or classes. Instead, ". . . the Legislature may make a reasonable classification of persons and pass special legislation applying to certain classes. The classification cannot be arbitrary, but must be based on some difference in the classes having a substantial relation to a legitimate objective to be accomplished. [Citation.] The presumption is in favor of the classification and will not be rejected unless plainly arbitrary. [Citation.]" (*People* v. *King* (1992) 3 Cal.App.4th 882, 886 [4 Cal.Rptr.2d 723], quoted in *People* v. *Heard, supra,* 18 Cal.App.4th at p. 1030.)

Numerous cases have found that different classes of detainees are *not* similarly situated for equal protection purposes, and, consequently, are not entitled to the same conduct credit (or the same ratio of conduct credit) for time spent in custody or detention. (*People* v. *Heard, supra,* 18 Cal.App.4th at p. 1030 [pretrial felony detainees and state prison inmates are not similarly situated for purposes of precise formula for calculating conduct credit]; *People* v. *Lapaille* (1993) 15 Cal.App.4th 1159, 1172 [19 Cal.Rptr.2d 390] [those on home arrest pursuant to an own recognizance release are not similarly situated to those in more penally restrictive settings]; *People* v. *Jacobs, supra,* 6 Cal.App.4th at pp. 103-104 [pretrial detainees who serve an exact multiple of four days are not similarly situated to those who do not]; *People* v. *Palazuelos* (1986) 180 Cal.App.3d 962, 965 [226 Cal.Rptr. 31] [probationer who agreed to enroll in privately run drug rehabilitation program is not similarly situated to person involuntarily committed to CRC]; *People* v. *Brunner* (1983) 145 Cal.App.3d 761, 765-766 [195 Cal.Rptr. 367] [person committed under the mentally disordered sex offender law (MDSO) "treatment model" is not similarly situated to person committed under the subsequently enacted MDSO "punishment model"].)

An addict is committed to CRC for treatment, while a prisoner is sent to prison primarily for punishment. (*People* v. *Williams, supra,* 232 Cal.App.3d

at p. 1648; *In re Mabie, supra,* 159 Cal.App.3d at p. 308.) Commitment to CRC is a *civil* proceeding, not a criminal action, and such treatment facilities are essentially nonpenal in character. (See *People* v. *Flores* (1971) 6 Cal.3d 305, 310 [98 Cal.Rptr. 822, 491 P.2d 406]; *People* v. *Flower* (1976) 62 Cal.App.3d 904, 911 [133 Cal.Rptr. 455].) As the Supreme Court explained in *People* v. *Superior Court (Syvinski)* (1970) 2 Cal.3d 527 [86 Cal.Rptr. 83, 468 P.2d 211], in order for CRC to be successful, " '. . . [i]t must retain its nonpenal character, and those who are receiving treatment must be able to function effectively in a minimum security setting, cooperate with fellow-patients and counselors in group therapy and work programs, and assume a certain degree of responsibility and self-reliance. Not all criminal defendants, unfortunately, exhibit these qualities.' [Citations.]" (*Id.,* at pp. 532-533, quoting Belton, *Civil Commitment of Narcotics Addicts in California: A Case History of Statutory Construction* (1968) 19 Hastings L.J. 603, 632-633.)

Thus, CRC committees are in effect a privileged minority who are subject to less "penally restrictive settings" than most prison inmates. (See *People* v. *Lapaille, supra,* 15 Cal.App.4th at p. 1172.) Furthermore, CRC committees can avail themselves of treatment programs which are not available to most prison inmates. For these reasons, we conclude that CRC committees are not similarly situated to prison inmates for the purpose of receiving conduct credit. Consequently, the Legislature may properly treat the two classes differently for the purpose of awarding conduct credit.

The judgment is affirmed.

Merrill, J., and Corrigan, J., concurred.