Filed 8/16/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOHN PAUL RAYGOZA,<br><br>    Defendant and Appellant. | B262978<br>(Los Angeles County<br>Super. Ct. No.  SA077302) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Leslie Brown, Judge.  Reversed in part, affirmed in part and remanded.

Law Offices of William J. Kopeny, William J. Kopeny; Ferrentino & Associates and Correen Ferrentino for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Stacy S. Schwartz and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

In 2011, while awaiting trial, appellant John Paul Raygoza fell $105,000 short in posting the bail set by the court. The court agreed to reduce bail if appellant agreed to be confined to his home under an electronic monitoring program established by the County of Los Angeles. In 2014, after pleading no contest to a charge of false imprisonment and receiving a sentence of four years, he sought presentence custody credit under Penal Code section 2900.5, which requires courts to award such credit for all "days served in home detention pursuant to . . . Section 1203.018."[1] The trial court denied the request, finding that appellant's confinement did not fall under section 1203.018, as that provision applies to inmates held "in lieu of bail," whereas appellant's home detention resulted from an agreement to post a lesser bail. Appellant contends this was error. We find that appellant's home detention entitled him to presentence custody credit under section 2900.5. Accordingly, we reverse in part, and remand for recalculation of presentence custody credit.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Information and Plea Agreement*

Appellant was charged by information filed January 24, 2012, with false imprisonment by violence (§ 236) and four other crimes. It was further alleged that appellant personally used a deadly weapon within the meaning of section 12022, subdivision (b)(1)), that a principal used a firearm within the meaning of section 12022, subdivision (a)(1), and that appellant had a prior conviction for battery that fell within section 667, subdivision (a) through (i) and section 1170, subdivision (h)(3).

---

[1]     Undesignated statutory references are to the Penal Code.

In September 2014, appellant pled no contest to false imprisonment (§ 236) and admitted the special allegations. The plea agreement included imposition of a four-year sentence consisting of: three years (the high term) for false imprisonment (see §§ 237 & 1170, subd. (h)), plus one year for the special allegation under section 12022, subdivision (a)(1), and a three-year concurrent sentence for a probation violation.

B. *Appellant's Pre-Conviction Home Detention and Sentence*

Appellant was arrested on April 12, 2011, and released four days later after posting $455,000 bail. On April 27, he was brought back into custody. At a new bail hearing on May 9, 2011, a representative for the bonding company reported that based on appellant's finances, he qualified for no more than a $350,000 bond. Appellant asked that bail be reduced to that amount. The court agreed to reduce bail, provided appellant agreed to electronically monitored home detention, "24-hour except for qualified medical and/or emergencies."

Subsequent to the court's order, appellant executed a "participant contract" for the Electronic Monitoring Program Los Angeles County. The contract provided that on the day he began the program, a transmitter would be "fitted to [his] ankle and a reporting unit . . . installed on [his] telephone," and that a case manager would establish "a schedule based on [his] permitted activities such as employment, counseling, drug or alcohol abuse treatment, and any other permitted activities." Under the contract, appellant agreed "to remain within the interior premises of [his] residence at all times, except for the days [he] work[ed], or to keep appointments for which [he had] received permission in advance." He was forbidden the use of alcohol or possession of any weapons. He further agreed to "admit any person or agent designated by the correctional administrator into [his] residence at any time for purposes of verifying [his] compliance with [the]

3

conditions of home detention," to "respond to all telephone calls generated from the Electronic Monitoring Program staff and monitoring equipment when [he was] at home regardless of the time of day or night," and to "submit [his] person, property, place of residence and/or personal effects to search at [any] time, with or without a warrant, and with or without probable cause." He agreed that the correctional administrator could retake him into custody if he failed to comply with the terms of the program.

The contract provided that "participation in the Probation Electronic Monitoring Program (EMP) is voluntary," and that if appellant preferred, he could "serve [his] sentence in custody at a jail facility." It stated that if he "willfully [left] [his] residence without authorization [or] fail[ed] to return to [his] residence at the prescribed time," he could be "prosecuted for escape under Penal Code section 4532." It included a provision stating: "I understand that if I am returned to custody for any reason, I will not receive any accelerated release credits and may be subjected to additional loss of good/work time."

Prior to the sentencing hearing (before a different judge), appellant filed a motion requesting that his time in home detention be included in calculating presentence custody credit under section 2900.5. His moving papers pointed out that the restrictions he lived under during this period mirrored those imposed on inmates participating in home detention under section 1203.018. Respondent did not dispute appellant's representation concerning the restrictions under which he lived, but contended that because he was "out on bail and not being held in lieu of bail," the provisions did not apply. The court denied appellant's request, finding that because appellant agreed to home detention with electronic monitoring as a condition of reduced bail and not "in lieu of bail" he was not entitled to the requested credit. The court awarded 19 days custody credit for the two brief

4

periods appellant spent in jail, plus 19 days good time/work time credit. This appeal followed.

## DISCUSSION

Section 2900.5, subdivision (a) applies to all convicted criminal defendants, awarding them credit for days spent "in custody." (See *People v. Johnson* (2010) 183 Cal.App.4th 253, 289.) Its two-fold legislative purpose is "'to eliminate the unequal treatment suffered by indigent defendants who, because of their inability to post bail, served a longer overall confinement than their wealthier counterparts [citations]'" (*People v. Mendez* (2007) 151 Cal.App.4th 861, 864, quoting *In re Rojas* (1979) 23 Cal.3d 152, 156), and to "equaliz[e] the actual time served in custody by defendants convicted of the same offense." (*In re Joyner* (1989) 48 Cal.3d 487, 494; see *In re Young* (1973) 32 Cal.App.3d 68, 75 [failure to provide presentence custody credit to defendant who could not afford to post bail "operates to create an unconstitutional discrimination" between "persons who are convicted of the same crime who are able to afford bail and so secure liberty and those who cannot do so and are confined"].) "Recognizing that defendants may be in pretrial custody in institutions other than 'jails' for reasons other than indigency, the Legislature and the courts have extended subdivision (a) of the statute to include a broad range of custodial situations for which credit must be granted . . . ." (*In re Rojas*, *supra*, 23 Cal.3d at p. 156.)

Subdivision (a) of section 2900.5 currently provides in relevant part: "In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, . . . all days of custody of the defendant, including

5

. . . days served in home detention pursuant to Section 1203.016 or Section 1203.018, shall be credited upon his or her term of imprisonment[.]"[2]

Section 1203.018 authorizes "the board of supervisors of any county" to "offer a program under which inmates being held in lieu of bail in a county jail or other county correctional facility may participate in an electronic monitoring program" under specified conditions. (§ 1203.018, subd. (b).) The statute leaves the exact terms of the electronic monitoring program to the discretion of county authorities, but requires the programs created to obtain the participant's assent in writing to the following conditions: (1) the participant "shall remain within the interior premises of his or her residence during the hours designated by the correctional administrator"; (2) the participant "shall admit any person or agent designated by the correctional administrator into his or her residence at any time for the purposes of verifying the participant's compliance with the condition of his or her detention"; (3) the electronic monitoring "may include global positioning system devices or other supervising devices for the purpose of helping to verify the participant's compliance with the rules and regulations of the electronic monitoring program" which may be used to record "conversations between the participant and the person supervising the participant . . . for the purposes of voice identification"; and (4) the administrator in charge of the facility from which the participant has been released may "immediately retake the person into custody" if the electronic monitoring device malfunctions, the participant fails to remain at home, the

---

[2] The provision was added to the statute in 2011, in the same legislation that enacted section 1203.018. (See Stats. 2011, ch. 15 (Assem. Bill No. 109), § 466.) Section 1203.016 governs electronic monitoring programs for convicted defendants committed to "a county jail or other county correctional facility or granted probation, or . . . participating in a work furlough program," and other than in its description of the category of inmates to whom it applies, contains substantially the same language as section 1203.018. (§ 1203.016, subd. (a).)

participant fails to pay the fees associated with the program, or the participant "for any other reason no longer meets the established criteria." (*Id.,* subds. (d)(1)-(d)(4).) The correctional administrator is empowered to "permit electronic monitoring program participants to seek and retain employment in the community, attend psychological counseling sessions or educational or vocational training classes, or seek medical and dental assistance." (*Id.*, subd. (h).)

The first sentence of section 1203.018 states that it applies "only . . . to inmates being held in lieu of bail and on no other basis." (§ 1203.018, subd. (a).) Subdivision (c) provides that to qualify for participation in the electronic monitoring program, the inmate must have "no holds or outstanding warrants," and that one of the following must apply: "[t]he inmate has been held in custody for at least 30 calendar days from the date of arraignment pending disposition of only misdemeanor charges"; "[t]he inmate has been held in custody pending disposition of charges for at least 60 calendar days from the date of arraignment"; or "[t]he inmate is appropriate for the program based on a determination by the correctional administrator that the inmate's participation would be consistent with the public safety interests of the community." (§ 1203.018, subd. (c)(1), (A)-(C).) Subdivision (g)(2) grants to the correctional administrator "discretionary authority consistent with this section to permit program participation as an alternative to physical custody," and subdivision (g)(1) provides: "A person shall be eligible for participation in an electronic monitoring program only if the correctional administrator concludes that the person meets the criteria for release established under this section . . . ."

There is no dispute that appellant was enrolled in the county's electronic monitoring program. The contract he signed was entitled "Electronic Monitoring Program Los Angeles County Participant Contract." Its first sentence read, "You have been placed in the Los Angeles County Probation Department Electronic

7

Monitoring Program (EMP) as an alternative to incarceration." Nor is there any dispute that appellant's electronically-monitored confinement was subject to the conditions described in section 1203.018: he was tagged with an electronic monitor, he was required to remain in his home during the hours designated by the administrator, he was required to admit agents of the administrator into his home to search and ensure compliance, and he was subject to being taken into custody if he failed to meet the program's requirements. Thus, he was in custody as restrictive as that of any defendant assigned to the County's electronic monitoring program who was eligible for custody credit under section 2900.5.

Respondent disputes that appellant was in custody "pursuant to" section 1203.018. Respondent's primary contention is that appellant's detention was not "'in lieu of bail and for no other reason'" because he "voluntarily entered into a special agreement with the court to post bail of $350,000 and stay on home confinement in exchange for reduction of bail from $455,000." We disagree. Appellant's home detention was "in lieu of" $455,000 bail. The court specifically advised appellant that to avoid remand, he would be required either to post an additional $105,000 or, in lieu of such additional bond, submit to home confinement. This placed appellant in the same position as any other defendant who lacked the financial resources to post a $105,000 bond in order to remain at liberty pending trial. The statutory purpose of "eliminat[ing] the unequal treatment suffered by indigent defendants who, because of their inability to post bail, served a longer overall confinement than their wealthier counterparts [citations]'" is equally served where the defendant must suffer home confinement because he or she cannot afford the bail set by the court and agrees to home confinement in exchange for a reduced amount. (*People v. Mendez*, *supra*, 151 Cal.App.4th at p. 864.)

8

Respondent directs our attention to a variation in the procedure that led to appellant's assignment to home detention under the County's electronic monitoring program, pointing out that no "correctional administrator" determined that appellant's participation would be consistent with the public safety interests of the community.[3] (See § 1203.108, subd. (c)(1)(C).) There is no dispute that the court, rather than a correctional administrator, made this determination. (See § 1275, subd. (a)(1) ["In setting, reducing, or denying bail, a judge or magistrate shall take into consideration the protection of the public, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at trial or at a hearing of the case. The public safety shall be the primary consideration"].) We view this as a distinction without a difference. Indeed, respondent suggests no reason why, in assessing a defendant's entitlement to custody credit, a judicial determination that the defendant may be placed on home confinement without jeopardizing public safety should be treated any differently than the same determination by a correctional administrator.

Accordingly, we conclude that the phrase "pursuant to . . . Section 1203.018" must be read to require the award of custody credit if the home-detained defendant participated in an electronic monitoring program established "pursuant to" section 1203.018 without regard to the manner in which the defendant came to be assigned to the program. The Legislature could not have intended to exclude

---

[3] Respondent also points out that appellant was in actual custody for only 19 days, falling short of the 60 calendar days that an inmate facing felony charges must be held in custody before seeking home detention under section 1203.018, subdivision (c)(1)(B). However, subdivision (c)(1)(C), of section 1203.018, allows an inmate to avoid serving the minimum jail time if the correctional administrator agrees that his or her participation in the electronic monitoring program "would be consistent with the public safety interests of the community." As noted, here the court determined that appellant could safely be detained at home.

9

home detentions that met the standards outlined in section 1203.018 from section 2900.5's definition of "in custody" merely because the defendant became a participant as a result of a court order. Denying a defendant presentence custody credit for days spent in home detention based on the manner in which he or she came to participate in the program would elevate form over substance; the focus is properly on whether the placement met certain custodial conditions and standards, not the procedure by which the defendant was placed. (See *People v. Mobley* (1983) 139 Cal.App.3d 320, 322-323 [trial court erroneously denied defendant presentence custody credit for time spent in halfway house because defendant lived there as a condition of release on his own recognizance rather than as a condition of probation; "[t]he right to credit is based not on the procedure by which a defendant is placed in such a facility, but on the requirements that the placement be 'custodial'"].)

That appellant's home detention was under the provisions of an electronic monitoring program established by Los Angeles County for pretrial detainees who meet the standards of section 1203.018 is not disputed. An interpretation of section 2900.5 that includes within the definition of "in custody" all "home detention[s]" under programs established pursuant to section 1203.018 provides appellant and all other defendants placed in the County's electronic monitoring program by the court the same presentencing custody credit awarded to defendants assigned to the program by the correctional administrator. Such interpretation ensures that like defendants are treated alike, and equalizes punishment for the same crimes. In addition, such interpretation harmonizes section 2900.5 with the federal and state constitutions' equal protection clauses.[4] Accordingly, we adopt

---

[4] A statute that precludes similarly detained defendants from receiving similar custody credit raises serious constitutional concerns. A precursor to the current provision
*(Fn. continued on next page.)*

10

this interpretation and conclude the trial court erred in refusing the requested custody credit.

---

appeared in section 2900.5 between 1991 and 1999 (see Stats. 1991, ch. 437 (Assem. Bill No. 688), § 10; Stats. 1994, ch. 770 (Assem. Bill No. 152), § 7), and was interpreted as applying only to "'home detention programs'" authorized under section 1203.016 (applicable to convicted defendants serving their sentences and no others). (*People v. Lapaille* (1993) 15 Cal.App.4th 1159, 1163-1168.) As a result, the defendant in *Lapaille* received no credit for spending over a year in home detention ordered as a condition of the trial court's decision to release him prior to trial on his own recognizance. (See *id.* at pp. 1162-1164.) In determining whether the state had a compelling interest in making this distinction, the court examined whether the defendant's confinement to his home was "as custodial or restraining" as the confinement faced by those held in home detention pursuant to programs authorized by section 1203.016, and concluded that "defendant in this case was subject to restraints at least as confining as those placed on persons in electronic home detention programs, so that his house arrest was just as 'custodial.'" (*Lapaille, supra,* 15 Cal.App.4th at p. 1169.) Accordingly, the court found the procedural differences were "not legitimate bases for treating defendant differently from those placed in electronic home detention program pursuant to section 1203.016," and held that the defendant was entitled to custody credits under the state and federal constitutions' equal protection clauses. (*Lapaille, supra,* at pp. 1169-1170.)

In reaching this conclusion, the court relied on the Supreme Court's decision in *In re Kapperman* (1974) 11 Cal.3d 542, where the Court considered a provision in a prior version of section 2900.5 mandating that convicted defendants receive credit for all days spent in custody starting from the date of arrest, but restricting its application to those "'delivered into the custody of the Director of Corrections on or after . . . []March 4, 1972[].'" (*In re Kapperman, supra,* 11 Cal.3d at p. 544, fn. 1.) The Court concluded that the limitation violated "article I, sections 11 and 21, of the California Constitution and the equal protection clause of the Fourteenth Amendment in that it constitute[d] a legislative classification which [was] not reasonably related to a legitimate public purpose." (*Id.* at p. 545.) Accordingly, the Court "invalidat[ed] . . . the invidious exception" and "extend[ed the] statutory benefit to those whom the Legislature improperly excluded." (*Id.* at p. 550.)

11

## DISPOSITION

The judgment is reversed as to the award of custody credit and the matter is remanded for a determination of the number of days of additional presentence custody credit to award appellant.  In all other matters, the judgment is affirmed.

**CERTIFIED FOR PUBLICATION**


MANELLA, J.


We concur:


WILLHITE, Acting P. J.


COLLINS, J.

12