Filed 5/4/22  P. v. Winslow CA4/1

### NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D078773 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN387417) |
| KELLEN BOSWELL WINSLOW II, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Blaine K. Bowman, Judge.  Affirmed.

Marc X. Carlos, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Elizabeth M. Kuchar, Deputy Attorneys General, for Plaintiff and Respondent.

In 2019, a jury convicted defendant Kellen Boswell Winslow II of forcible rape, indecent exposure, and lewd conduct.  Winslow subsequently pleaded guilty to rape of an unconscious person and assault with intent to

rape. After receiving a sentence of 14 years in state prison, Winslow sought 233 days of custody credit for time he spent on electronic monitoring prior to sentencing under Penal Code[1] section 2900.5, which entitles an individual to credit for all "days served in home detention pursuant to . . . Section 1203.018." The trial court awarded Winslow four days of credit but determined he was ineligible for credit during the remaining 229 days that he was under electronic monitoring but not subject to home detention.

On appeal, Winslow asserts that he is entitled to presentence custody credit during the 229-day period when he was electronically monitored, characterizing the conditions of his bail release during this period as "home detention." We conclude Winslow has not demonstrated he is entitled to relief and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In June 2018, Winslow was arrested and charged with two counts of kidnapping (§ 209, subd. (b)(1)); two counts of forcible rape (§ 261, subd. (a)(2)); forcible oral copulation (§ 288a, subd. (c)(2)(A)); forcible sodomy (§ 286, subd. (c)(2)(A)); indecent exposure (§ 314, subd. (1)); and two counts of first degree residential burglary (§§ 459, 460). Winslow was alleged to have committed the offenses against different victims on separate occasions in 2018.

On July 12, 2018, after a two-day preliminary hearing, the trial court held Winslow to answer on the forcible kidnapping, forcible sex crimes, and

---

[1] All subsequent statutory references are to the Penal Code.

[2] In the trial court, Winslow waived his right to appeal his criminal convictions, and the details of Winslow's offenses were not discussed by the parties in their briefs. We therefore omit a discussion of facts relating to Winslow's offenses and limit our discussion to matters relevant to this appeal.

2

attendant allegations as well as the indecent exposure charge, while also finding insufficient evidence to support the charges for residential burglary. Over the People's objection, the court set Winslow's bail at $2 million; ordered GPS monitoring as a condition of Winslow's bail release; and ordered Winslow to surrender his passport.[3] The court also issued criminal protective orders prohibiting Winslow from contacting or coming within 100 yards of the alleged victims. Regarding the conditions of the bail release, the court stated: "As it relates to the issue of bail, the Court is going to set bail to the following conditions. There is to be no contact, direct, indirect, telephonically, or in writing with any alleged victim or complainant. The defendant is to wear a GPS monitor at all times if he is released. The bail amount [is] set at two million dollars." The court indicated in a minute order that the GPS monitoring was to be installed through "SCRAM or CPAC[.]"[4]

---

[3]    To account for the additional charges brought against Winslow on July 12, 2018, the court set bail at $1,900,000 for the original case and $100,000 for the subsequent case.

[4]    The San Diego County Sheriff's Department website describes CPAC as follows: "The County Parole and Alternative Custody Unit (CPAC) was created to provide alternative custody programs. These programs include County Parole, Fire Camp, Home Detention, and Residential Reentry Center/Work Furlough with electronic monitoring. These programs are designed to socially reintegrate offenders through continued treatment and other required programming with a proactive supervision method. This method of supervision is designed to place the CPAC staff in contact with participants so that the goals and objectives of community safety, security, and reintegration can be achieved." (<https://www.sdsheriff.gov/bureaus/detention-services-bureau/county-parole-and-alternative-custody [as of April 13, 2022], archived at <https://perma.cc/8AD3-7LRK>.)

That same day, Winslow was charged with additional counts of forcible rape (§ 261, subd. (a)(2)) and rape of an unconscious person (§ 261, subd. (a)(4)), stemming from a 2003 incident involving an additional victim.

Winslow requested during a hearing on August 6, 2018, for his electronic monitoring to be administered by SCRAM rather than CPAC. According to the minute order, the trial court denied Winslow's request after hearing arguments from the parties on the issue and ordered monitoring by CPAC during Winslow's bail release.[5]

On February 22, 2019, while wearing his GPS ankle bracelet, Winslow was at a gym when he committed new offenses against a new victim. Based on this new incident, Winslow was charged with two counts of lewd act in public (§ 647, subd. (a)), willful cruelty to elder (§ 368, subd. (c)), and elder battery (§ 243.25).

At the arraignment for the new charges on February 28, 2019, the trial court modified the terms of Winslow's bail release. In the minute order from the hearing, the court stated: "[Defendant] is ordered to not leave his home; to not take GPS bracelet off [and] to keep [the] GPS bracelet charged at all times. If [defendant] fails to comply [with any] of these release conditions, the court authorizes the sheriff to arrest the [defendant] immediately . . . [Defendant] may only leave the house to travel to [and] from court proceedings." A few days later, on March 4, 2019, the court remanded Winslow into custody without bail.

On June 10, 2019, a jury convicted Winslow of one count of forcible rape, one count of indecent exposure, and one count of lewd conduct. The

---

[5]    The record filed on appeal does not contain a reporter's transcript from the August 6, 2018 hearing.

jury acquitted appellant of the second lewd conduct charge and deadlocked on the remaining counts.[6]

Following the jury verdict, the People indicated its intention to retry Winslow on the deadlocked charges. Winslow subsequently pleaded guilty to one count of rape of an unconscious person, and one count of assault with intent to rape. As part of the plea, the remaining charges and allegations were dismissed, the parties stipulated to a 14-year prison sentence, and Winslow waived his right to appeal his convictions.

On March 3, 2021, the trial court sentenced Winslow pursuant to the terms of the plea agreement to 14 years in state prison. Winslow contended at sentencing, through counsel, that he was entitled to 233 days of custody credit for the time he spent on electronic monitoring prior to sentencing. Counsel noted that the terms of Winslow's release during this period required monitoring by law enforcement officers through CPAC, and counsel also indicated that there may have been a "curfew aspect to it as well." In opposition, the People argued that Winslow was not entitled to presentence credit for this period because the preliminary hearing judge had only ordered GPS monitoring, not home detention. The court agreed with the People, finding that the conditions of Winslow's presentence release did not entitle him to custody credit because even though he was under electronic monitoring, Winslow "was not restricted to home detention" and was "free to roam about." Thus, the court did not award Winslow any presentence credits for the 233 days he was under GPS monitoring.

Winslow then filed a motion for reconsideration, reasserting he was entitled to custody credit during the period when he was subject to electronic

---

6    According to the briefing on appeal and the People's motion in the trial court, one count of kidnapping was dismissed before trial under section 995.

5

monitoring by CPAC. He contended his custody during this timeframe was as restrictive as any defendant on home detention, explaining, "Mr. Winslow was subject to law enforcement entry and search of his person and home at any time during the detention. His movements were monitored at all times. In addition, while Mr. Winslow was permitted to travel within San Diego County, he was subject to strict curfew conditions. Any violation of those conditions would result in his arrest and incarceration." However, the motion did not refer to any evidence in the record nor was any evidence attached to the motion relating to the terms of Winslow's supervision during this period.

In its opposition to reconsideration, the People conceded that Winslow was eligible for an additional four days of credit for the period of February 28 to March 3, 2019, when the trial court specifically ordered Winslow to remain in his home. The People maintained, however, that Winslow was not entitled to any presentence credit for the period when he was out of custody and not ordered to home detention.

At the hearing on reconsideration, the trial court accepted the People's stipulation to award Winslow with four additional days of presentence credit for February 28 to March 3, 2019, when Winslow was ordered to home detention. However, the court ruled that Winslow was not entitled to credit for the remaining 229 days when he was under electronic monitoring, because Winslow was not subject to home detention during this period. The court noted that the order issued by the preliminary hearing judge setting the terms for electronic monitoring "was very specific and did not include home detention." The court also rejected Winslow's contention that the bail release terms during this period were the "functional equivalent" of home detention, finding no evidence in the record to support this contention.

Winslow timely appealed.

6

DISCUSSION

Winslow's sole contention on appeal is that the trial court erred in refusing to award him 229 days of custody credit under section 2900.5 for the time he was on bail release and subject to electronic monitoring. After reviewing the record, we requested supplemental briefing from the parties concerning what evidence, if any, demonstrated that Winslow participated in a home detention program within the meaning of section 1230.018 during the relevant period. Having considered the parties' supplemental briefs and the record on appeal, we conclude that the trial court correctly determined that Winslow's electronic monitoring program did not meet the statutory requirements for presentence credit.

A. *Governing Legal Principles and Standard of Review*

Under section 2900.5, defendants are entitled to credit for days spent "in custody." (*People v. Johnson* (2010) 183 Cal.App.4th 253, 289.) "[Section 2900.5's] two-fold legislative purpose is ' "to eliminate the unequal treatment suffered by indigent defendants who, because of their inability to post bail, served a longer overall confinement than their wealthier counterparts [citations]" ' [citations], and to 'equaliz[e] the actual time served in custody by defendants convicted of the same offense.' [Citations.] 'Recognizing that defendants may be in pretrial custody in institutions other than "jails" for reasons other than indigency, the Legislature and the courts have extended subdivision (a) of the statute to include a broad range of custodial situations for which credit must be granted . . . .' [Citation.]" (*People v. Raygoza* (2016) 2 Cal.App.5th 593, 598 (*Raygoza*).)

Section 2900.5 provides that "[i]n all felony . . . convictions, either by plea or by verdict, when the defendant has been in custody, including, but not limited to . . . days served in home detention pursuant to Section . . .

7

1203.018, shall be credited upon his or her term of imprisonment[.]" (*Id.*, subd. (a).)  " '[T]erm of imprisonment' includes any period of imprisonment imposed as a condition of probation or otherwise ordered by a court in imposing or suspending the imposition of any sentence."  (*Id.*, subd. (c).)

"Section 1203.018 authorizes 'the board of supervisors of any county' to 'offer a program under which inmates being held in lieu of bail in a county jail or other county correctional facility may participate in an electronic monitoring program' under specified conditions. (§ 1203.018, subd. (b).)" (*Raygoza*, *supra*, 2 Cal.App.5th at p. 599.)  An " '[e]lectronic monitoring program' " is defined as "includ[ing], but is not limited to, home detention programs, work furlough programs, and work release programs." (§ 1203.018, subd. (j)(2).)  The correctional administrator is authorized to "permit electronic monitoring program participants to seek and retain employment in the community, attend psychological counseling sessions or educational or vocational training classes, or seek medical and dental assistance."  (*Id.* subd. (h).)

A participant in an electronic home monitoring program must "be supervised[.]"  (§ 1203.018, subd. (n)(2).)  Although the statute leaves the exact terms of the supervision to the discretion of county authorities, the participant must, at a minimum, abide by the following restrictions:  (1) "[R]emain within the interior premises of the participant's residence during the hours designated by the correctional administrator"; (2) "admit any person or agent designated by the correctional administrator into the participant's residence at any time for purposes of verifying the participant's compliance with the conditions of the detention"; and (3) agree to the use of electronic monitoring including "global positioning system devices or other supervising devices for the purpose of helping to verify the participant's

compliance with the rules and regulations of the electronic monitoring program," and which may be used to record "conversation[s] between the participant and the person supervising the participant . . . for the purposes of voice identification." (*Id.*, subd. (d)(1)–(3).) Additionally, the administrator in charge of the facility from which the participant has been released may "immediately retake the person into custody" if the electronic monitoring device malfunctions, the participant fails to remain at home, the participant fails to pay the fees associated with the program, or the participant "for any other reason no longer meets the established criteria." (*Id.*, subd. (d)(4).)

Whether an individual is in "custody" for purposes of section 2900.5 is a matter of statutory interpretation, which we review de novo. (*People v. Ravaux* (2006) 142 Cal.App.4th 914, 919.) The burden is on the accused to establish entitlement to presentence custody credit. (*People v. Shabazz* (2003) 107 Cal.App.4th 1255, 1258.)

B. *There is No Evidence That Winslow Participated in a Home Detention Program Within the Meaning of Section 1203.018 from July 12, 2018 to February 28, 2019*

Winslow contends he is entitled to credit for the entire period he wore an electronic monitor prior to sentencing. He asserts that from July 14, 2018 to February 28, 2019, he "could leave his home as permitted by the home detention program to attend doctor's appointments, attorney appointments, and other sanctioned activities." He further asserts that "he had to remain within the interior of the premises of his residence during the hours designated by the correctional administrator; he was required to admit officers into his residence at any time; and he could be immediately retaken into custody to serve the balance of his sentence if the electronic monitoring device was unable for any reason to properly perform its function or if he failed to remain within the place of detention." He contends that the terms of

his presentence release amounted to a "home detention program" as defined by section 1203.018, and he is therefore entitled to an additional 229 days of credit.

Having reviewed the record on appeal, we conclude Winslow has not established that he is entitled to relief. According to the transcript and minute order from the preliminary hearing on July 12, 2018, the trial court set Winslow's bail at $2 million on the condition that he wear a GPS monitoring device, while also precluding him from contacting the alleged victims and requiring him to turn over his passport. The court later modified Winslow's bail conditions at a hearing on February 28, 2019, when he was arraigned for the new charges stemming from the new crimes he committed while on bail release. At that hearing, the court required Winslow to continue wearing a GPS monitoring device, while also requiring Winslow to remain in his home except for court proceedings. The court also explicitly authorized the sheriff to arrest Winslow "immediately" if he failed to comply with any release conditions. Winslow's home detention lasted from February 28 to March 4, 2019, when he was remanded into custody without bail for the remainder of the proceedings.

Although Winslow asserts that he was subject to home detention from July 14, 2018 to February 28, 2019, there is no evidence in the record to support this assertion. In fact, the only evidence cited in Winslow's opening brief to support his contention that his "home detention" began on July 14, 2018 is the minute order from the preliminary hearing when the terms of his bail release were set. Thus, the minute order from this hearing was only for GPS monitoring and restricted Winslow from leaving the country and did not require home detention.

In our request for supplemental briefing, we directed the parties to address whether evidence existed that could demonstrate that Winslow's electronic monitoring fell within the meaning of a home detention program under section 1203.018. As we explained in the order, such evidence could include whether Winslow had signed an agreement to participate in an electronic monitoring program; what schedule, if any, was imposed for his electronic monitoring program; and if any monitoring reports were generated reflecting that Winslow complied with the terms and conditions of the monitoring program. Winslow did not identify any evidence in his supplemental brief that can establish that he was subject to a home detention program during the relevant period. In particular, he has not identified any evidence showing that he signed an agreement to participate in an electronic monitoring program, any evidence of a schedule imposed for the hours of home confinement, or any evidence of monitoring reports reflecting his compliance with the conditions of his release.[7]

Given the lack of record support for Winslow's assertions on appeal, we must presume the trial court correctly denied him custody credit for the period from July 14, 2018 to February 28, 2019. This conclusion "follows from the cardinal rule of appellate review that a judgment or order of the trial court is presumed correct and prejudicial error must be affirmatively

---

[7] Although the Attorney General's arguments on appeal suggest that Winslow was restricted from leaving San Diego County and was subject to a curfew, no record evidence is cited, and we have found none independently, to show that Winslow was subject to these limitations during the relevant period. We note that Winslow's arguments in the trial court, through counsel, that he was subject to a curfew are not evidence that this court may rely on in its review of the trial court's judgment. (*Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 139 ["Statements and arguments by counsel are not evidence."].) Moreover, the time of Winslow's purported curfew has never been specified.

shown. [Citation.] 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." ' [Citation.] This general principle of appellate practice is an aspect of the constitutional doctrine of reversible error. [Citation.] ' "A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." ' [Citation.] 'Consequently, [appellant] has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires that the issue be resolved against [appellant].' [Citation.]." (*Foust v. San Jose Const. Co., Inc.* (2011) 198 Cal.App.4th 181, 187.)

Moreover, even the limited record available is sufficient to support the trial court's judgment. Beginning on July 14, 2018, the trial court conditioned Winslow's bail release on his assent to electronic monitoring, he was required to turn over his passport, and he was precluded from contacting the alleged victims. There is no evidence in the record to indicate that further limitations on Winslow's movement or liberty were ever ordered prior to February 28, 2019. As the trial court correctly observed, Winslow could not have been confined to his home during this time, since on February 22, 2019, he committed new offenses against a new victim while he was at a gym and wearing his GPS monitoring device. Additionally, after Winslow was arraigned on the new offenses, the court modified the existing order to require Winslow to home confinement, and he was explicitly not permitted to leave his home except for court proceedings. The fact that the court changed

the conditions of his release to house arrest at the hearing on February 28, 2019, indicates that home detention was not required prior to the date.

"Custody," against which presentence credit is statutorily available, involves regulation of behavior or a supervised and structured lifestyle. (*People v. Pottorf* (1996) 47 Cal.App.4th 1709, 1718; *People v. Reinertson* (1986) 178 Cal.App.3d 320, 327.)  To be eligible for presentence credit under section 2900.5, "the focus is properly on whether the placement met certain custodial conditions and standards, not the procedure by which the defendant was placed." (*Raygoza, supra*, 2 Cal.App.5th at p. 601.)   Here, the evidence in the record supports the trial court's finding that despite being subject to electronic monitoring, Winslow was "free to roam about" while on bail release prior to February 28, 2019, and the court appropriately distinguished between this period and the period when the court expressly ordered Winslow to home detention after he reoffended.  Thus, the terms of Winslow's bail release from July 14, 2018 to February 28, 2019 do not satisfy the statutory requirements for presentence custody credit.  (*Cf. Raygoza* at p. 600 [appellate court found "no dispute that appellant was enrolled in the county's electronic monitoring program," "[n]or [was] there any dispute that appellant's electronically monitored confinement was subject to the conditions described in section 1203.018."]

Winslow asserts that the "critical element" in this case is that his electronic monitoring was administered through the sheriff's department under CPAC, rather than a private entity.  He suggests that the "functional reality" of this arrangement was that Winslow's pretrial release was structured under the requirements set forth by section 1203.018.

A panel from this court recently held in *People v. Gerson* (2022) 74 Cal.App.5th 561, 582–584 (*Gerson*) that a defendant placed on home

detention and subject to electronic monitoring while on bail is similarly situated to persons participating in a home detention electronic monitoring program under section 1203.018, and is therefore entitled to presentence credits as a matter of equal protection. In *Gerson,* as a condition of his bail release, the defendant was ordered to wear a GPS monitoring device, placed on home detention subject to a Fourth Amendment waiver, and required to remain in his home during the hours designated by the court. (*Gerson*, at p. 583.) The panel from this court concluded that the defendant was similarly situated to a person participating in an electronic monitoring program under section 1203.018 because "the terms of his release were at least as 'custodial, or restraining' as a statutory home detention program pursuant to section 1203.018." (*Gerson*, at p. 583.) The court could discern no rational basis for treating a defendant out on bail and subject to a home detention electronic monitoring program different from an individual participating in a program pursuant to section 1203.018, since both categories involved "similarly restrictive home detention conditions[.]" (*Gerson*, at p. 584.)

Here, there is no evidence in the record to support the conclusion that Winslow participated in a home detention program that was as custodial or restraining as a home detention program pursuant to section 1203.018. As discussed previously, the record does not contain any evidence of a signed agreement by Winslow to participate in a home detention monitoring program and follow all its rules and regulations, a document detailing the schedule imposed for the hours of Winslow's home confinement, or any monitoring reports showing Winslow's compliance with the terms and conditions of his release. For instance, unlike the defendant in *Gerson*, there is no evidence in this record to demonstrate that Winslow was subject to a

14

Fourth Amendment waiver or subject to a specific curfew during the relevant period. (*Gerson*, at p. 583.) For these reasons, there is no evidence to support the conclusion that the conditions of Winslow's bail release were similarly restrictive to the home detention conditions described in section 1203.018.

To support his claim that his bail release was the "functional equivalent" of a home detention program under section 1203.018, Winslow relies on the involvement of the sheriff's department through CPAC in administering his GPS monitoring. Although Winslow's bail release was monitored by CPAC, he has failed to demonstrate that this fact alone entitles him to presentence custody credit. Under section 1203.018, the correctional administrator with the approval of the board of supervisors is empowered to contract with public *or* private agencies to operate home detention programs. (*Id.*, subd. (n)(1).) Other than subjecting private agencies to certain contracting requirements, the statute does not distinguish between the conditions of the home monitoring programs operated by a private agency with those operated by a public agency. (*Id.*, subd. (n)(1)–(2).) Thus, CPAC's involvement in presentence monitoring does not, on its own, demonstrate that a defendant's presentence release meets the statutory conditions set forth by section 1203.018.

Additionally, there is no evidence in the record to show that CPAC's involvement created bail release conditions that were the functional equivalent of the conditions described by section 1203.018, such that Winslow was "in custody" for purposes of receiving custody credit under section 2900.5, subdivision (a). Although the record reflects that Winslow asked the trial court to order monitoring by a private agency rather than CPAC, the only record from this hearing submitted on appeal is the minute order, which simply indicates that the court ordered monitoring under CPAC. The minute

order is otherwise silent as to what the terms of Winslow's bail release were, or what CPAC was authorized to do to enforce those terms. Contrary to Winslow's assertion, we cannot "assume" from CPAC's mere involvement that Winslow was subject to the conditions described in section 1203.018. Rather, the evidence in the record indicates that Winslow was not subject to home detention during this period, meaning that the terms of his bail release did not meet the minimum conditions set forth by the statute.

Accordingly, we conclude that Winslow is not entitled to 229 days of custody credit pursuant to section 2900.5, subdivision (a).

DISPOSITION

The judgement is affirmed.


O'ROURKE, Acting P. J.

WE CONCUR:


IRION, J.


DO, J.

16