Filed 12/16/24  P. v. Lomack CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROBERT CHEVOI DAUVGHNTE LOMACK, JR.,<br><br>    Defendant and Appellant. | A169363<br><br>(Marin County<br> Super. Ct. No. SC219696A) |

The trial court refused to award defendant Robert Chevoi Dauvghnte Lomack, Jr., preconviction credits for time he spent released on his own recognizance subject to certain conditions, including electronic monitoring and a curfew.  On appeal, Lomack contends the trial court violated his equal protection rights under the federal and state Constitutions because it treated him differently than persons participating in a statutory electronic monitoring program pursuant to Penal Code[1] section 1203.018—who are awarded preconviction credits—without a rational basis for doing so.  We reject Lomack's equal protection claim but we remand to allow the trial court

_____

[1] Undesignated statutory references are to the Penal Code.

to correct clerical errors in the abstract of judgment and, otherwise, we affirm.

## I. BACKGROUND

In May 2022, Lomack caused a head on collision with a motorcycle which seriously injured the other driver. He was charged by felony complaint with driving under the influence of an alcoholic beverage and causing injury (Veh. Code, § 23153, subd. (a)) and driving with a blood alcohol level of .08 percent or above (*id.*, § 23153, subd. (b)). The complaint also alleged various enhancements, prior convictions, and aggravating factors.

At his arraignment, the trial court released Lomack on his own recognizance subject to the following conditions: he was placed under the supervision and custody of the probation department pretrial services division; he had to wear GPS monitoring and alcohol detector devices; he had a curfew from 8:00 p.m. to 8:00 a.m. during which time he had to stay at home; he could not use, consume, or possess alcohol, marijuana, non-prescribed substances, or illegal substances, and there could be no alcohol in the residence;[2] he could not drive a vehicle; and he had to submit to a search and seizure of his person, vehicle, residence, or property at any time, with or without probable cause, and with or without a warrant. If he violated his curfew, consumed alcohol, or there was alcohol in the residence, he would be arrested and returned to custody. Lomack agreed to these conditions. Subsequently, Lomack's curfew hours—originally 8:00 p.m. to 8:00 a.m.— were reduced twice, first to 8:00 p.m. to 6:00 a.m. and eventually to 10:00 p.m. to 6:00 a.m. based on his work schedule.

In June 2023, the trial court terminated Lomack's pretrial release for violating its terms—he had consumed alcohol and tampered with the alcohol

---

[2] Lomack resided at his mother's house.

2

monitoring device. The court remanded Lomack to custody without bail. In September 2023, Lomack pled guilty to driving with a blood alcohol level of .08 percent or above (Veh. Code, § 23153, subd. (b)) and admitted the section 12022.7, subdivision (b) great bodily injury allegation, the prior strike allegation, and the aggravating factors. He agreed to a maximum nine-year prison term.

Before sentencing, Lomack filed a "correction of probation report as it relates to credits or request to court to issue properly earn[ed] credits" and requested an award of credits for the time he spent on electronic monitoring and under a curfew. (Capitalization omitted.) He argued that the time he spent released on his own recognizance with the imposed conditions should be considered custodial under section 2900.5, subdivision (a) because he was electronically monitored with an alcohol monitoring device, could not drive, attended Alcoholic Anonymous meetings five days per week, had to check-in with probation officers, was prohibited from entering establishments which mainly served alcohol, and faced punishment from the court if he violated the conditions. These, he argued, constituted custodial restrictions which were akin to time spent in a facility or institution. The People opposed Lomack's request. They argued Lomack was not entitled to preconviction credits for the time he was released on his own recognizance because the restrictions were not akin to custody under section 2900.5, subdivision (a). Because Lomack's schedule was not regulated other than during curfew hours, the People argued, he was not subject to the same restrictions as people on home detention.

In October 2023, after hearing the parties' arguments, the trial court refused to award Lomack credits for the time he spent on pretrial release, finding the conditions were not sufficiently restrictive to amount to custody.

3

The court explained that while his movement was restricted at nighttime during curfew hours, Lomack was "free to go wherever [he] wanted" outside the curfew hours. There were no restrictions on his movement, his personal appearance, or who he could visit. He could do whatever he wanted except drink alcohol. The court concluded the restrictions were "not sufficiently restrictive to amount to custody." The court sentenced Lomack to nine years in prison.

## II. DISCUSSION

Lomack contends the trial court violated his equal protection rights when it denied him custody credits for the time he spent released on his own recognizance subject to certain conditions. Specifically, he argues that his pretrial release imposed restrictions similar to those required for an electronic monitoring program pursuant to section 1203.018 but he was treated differently because participants under that statute are entitled to custody credits. We reject his argument.[3]

Section 2900.5, subdivision (a) provides in pertinent part that in all felony convictions, "when the defendant has been in custody, . . . all days of custody of the defendant, *including . . . days served in home detention pursuant to Section 1203.016 or 1203.018*, shall be credited upon his or her term of imprisonment." (Italics added). Section 1203.018 governs home detention prior to sentencing while 1203.016 governs home detention postsentencing. (*People v. Yanez* (2019) 42 Cal.App.5th 91, 93–94.) Section

---

[3] As noted in the concurrence, Lomack forfeited his equal protection claim by not raising it in the trial court. (See *People v. Dunley* (2016) 247 Cal.App.4th 1438, 1447.) However, this court has " 'discretion to address constitutional issues raised on appeal' where . . . 'the issue presented is "a pure question of law" turning on undisputed facts.' " (*People v. Heard* (2022) 83 Cal.App.5th 608, 626–627.) We will exercise our discretion to consider Lomack's claim.

1203.018 authorizes a county "to offer a program under which inmates being held in lieu of bail in a county jail or other county correctional facility may participate in an electronic monitoring program." (§ 1203.018, subd. (b).) An " '[e]lectronic monitoring program' " is defined as including "home detention programs." (*Id.*, subd. (j)(2).) The statute authorizes the board of supervisors to "prescribe reasonable rules and regulations under which an electronic monitoring program pursuant to this section may operate." (*Id.*, subd. (d).)

A participant in an electronic home monitoring program must "be supervised." (§ 1203.018, subd. (n)(2).) Although the statute leaves the exact terms of the supervision to the discretion of county authorities, the participant must, at a minimum, abide by the following restrictions: (1) "[R]emain within the interior premises of the participant's residence during the hours designated by the correctional administrator"; (2) "admit any probation officer or other peace officer[4] designated by the correctional administrator into the participant's residence at any time for purposes of verifying the participant's compliance with the conditions of the detention"; (3) the "electronic monitoring may include global positioning system devices or other supervising devices for the purpose of helping to verify the participant's compliance with the rules and regulations of the electronic monitoring program"; and (4) the "correctional administrator . . . may, without further order of the court, immediately retake the person into custody if the electronic monitoring or supervising devices are unable for any reason to properly perform their function at the designated place of home

---

[4] The version of section 1203.018 in effect at the time of Lomack's release and sentencing stated that the participant "shall admit any person or agent designated by the correctional administrator." (Former § 1203.018, subd. (d)(2).)

detention, if the person fails to remain within the place of home detention as stipulated in the agreement, or if the person for any other reason no longer meets the established criteria under this section." (*Id.*, subd. (d)(1)–(4).) "The correctional administrator may permit electronic monitoring program participants to seek and retain employment in the community, attend psychological counseling sessions or educational or vocational training classes, or seek medical and dental assistance." (*Id.*, subd. (h).) If a participant does not comply with the rules of the program, they may be retaken into custody without a warrant. (*Id.*, subd. (f).)

"Both the state and federal Constitutions extend to persons the equal protection of law." (*People v. Chatman* (2018) 4 Cal.5th 277, 287.) This concept " ' "compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." ' " (*Ibid.*) "An equal protection analysis has two steps. ' " 'The first prerequisite . . . is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citations.] This initial inquiry is not whether persons are similarly situated for *all* purposes, but 'whether they are similarly situated *for purposes of the law challenged.*' " ' " (*Conservatorship of Eric B.* (2022) 12 Cal.5th 1085, 1102.) To show that he is "similarly situated to persons participating in an electronic monitoring program pursuant to section 1203.018, [Lomack] must establish that the terms of his release were as 'custodial, or restraining' as a statutory home detention program pursuant to section 1203.018." (*People v. Gerson* (2022) 80 Cal.App.5th 1067, 1089 (*Gerson*); see also *People v. Raygoza* (2016) 2 Cal.App.5th 593, 601 ["the focus is properly on whether the placement met certain custodial conditions and standards"].) "If persons are not similarly situated for purposes of the law, an equal protection claim fails

6

at the threshold." (*People v. Buffington* (1999) 74 Cal.App.4th 1149, 1155.) "If the groups are similarly situated, the next question is whether the disparate treatment can be justified by a constitutionally sufficient state interest." (*Conservatorship of Eric B.*, at p. 1102.) We review an equal protection claim de novo. (*California Grocers Assn. v. City of Los Angeles* (2011) 52 Cal.4th 177, 208.)

Here, we conclude Lomack is not similarly situated to persons participating in a statutory electronic monitoring program pursuant to section 1203.018. Lomack had a curfew, was required to wear GPS and alcohol monitoring devices, and waived his Fourth Amendment rights. (See § 1203.018, subd. (d)(1)–(4).) These conditions alone, however, do not support a conclusion that Lomack was similarly situated to section 1203.018 participants. Section 1203.018 restricts what the participant may do outside of the designated hours in which they must remain in the residence. (See *id.*, subd. (h) ["correctional administrator may permit . . . participants to seek and retain employment in the community, attend psychological counseling sessions or educational or vocational training classes, or seek medical and dental assistance"].) By its own terms, then, section 1203.018 requires the participant to receive permission to leave the residence and it imposes restrictions on the allowable reasons a participant may be permitted to leave, such as work or counseling.

Here, by contrast, the trial court did not impose similar restrictions. While Lomack had to be at home during the nighttime curfew hours, outside of those hours there were no restrictions on his movement—except that he could not consume alcohol or drugs and could not drive—or mandate that he obtain permission to leave. Nor does Lomack point to anything in the record demonstrating that he was only allowed to leave his residence for specified

7

reasons. A colloquy when the court modified Lomack's curfew to 10:00 p.m. to 6:00 a.m. demonstrates his freedom of movement outside of curfew hours. The prosecutor requested that the reduced hours apply "on working days only, not weekends or not days where he's not working." The court declined to impose the requested restriction. As the court explained in denying Lomack's request for credits, outside of curfew hours he was "free to go wherever [he] wanted."[5]

*Gerson*, *supra*, 80 Cal.App.5th 1067 is distinguishable. There, the defendant was released on bail to home detention, which required that he remain in his home during the hours designated by the court, wear a GPS monitoring device, and be subject to a Fourth Amendment waiver. (*Id*. at pp. 1078, 1090.) The appellate court concluded the defendant was similarly situated to someone participating in an electronic monitoring program pursuant to section 1203.018. (*Gerson*, at p. 1089.) The conditions imposed in *Gerson* demonstrate the custodial, or restraining, nature of the defendant's home detention. Initially, the court allowed the defendant 90 minutes each day to do personal errands and required he be accompanied by a responsible adult. "The court then ordered him to surrender his passport, remain on GPS monitoring, abstain from alcohol, regularly drug test, and attend psychological counseling." (*Id*. at p. 1087, fn. 17.) The court eventually

---

[5] The court also notes that Lomack was not similarly situated to persons participating in a statutory electronic monitoring program pursuant to section 1203.018 as he was not, "without further order of the court, immediately retake[n] . . . into custody." (§ 1203.018, subd. (d)(4).) When the court warned that Lomack "would be subject to being immediately arrested and brought back into custody" for violating his terms and conditions, it is not clear from the record that the court delegated the authority to the supervising entity to immediately retake Lomack into custody without further court process. Instead, he was afforded a hearing in open court on whether there was a violation of his release terms before he was remanded.

allowed the defendant to work between 7:00 a.m. and 6:00 p.m., and he was later allowed to work until 8:30 p.m. one day a week "and spend three nights a week at his girlfriend's home. He remained subject to a curfew, wore a GPS device and was subject to a Fourth Amendment waiver." (*Ibid*.) Nothing in *Gerson* suggests that the defendant could leave his house for any reason other than those stated. (*Ibid*.; see also *People v. Lapaille* (1993) 15 Cal.App.4th 1159, 1169 [defendant's house arrest "was just as 'custodial' " as persons participating in electronic home detention programs, where he had to remain at home except for visits to his lawyer, court appearances, and to walk his daughter to the school bus].)

Here, by contrast, Lomack's release did not restrict where he could go or what he could do outside of his curfew hours (except for not drinking alcohol and not driving). Unlike in *Gerson*, the trial court here did not require Lomack to participate in any kind of counseling or treatment.[6] Therefore, Lomack's pretrial release was not as custodial or restraining as the restrictions imposed on a person participating in a statutory electronic monitoring program pursuant to section 1203.018. (See *Gerson*, *supra*, 80 Cal.App.5th at p. 1089.) We conclude Lomack was not similarly situated to participants in a statutory electronic monitoring program pursuant to section 1203.018. Accordingly, his equal protection claim fails at the threshold inquiry. (See *People v. Buffington*, *supra*, 74 Cal.App.4th at p. 1155.)

The trial court is directed, however, to amend the abstract of judgment to correct clerical errors. (*People v. Mitchell* (2001) 26 Cal.4th 181, 186–187 [appellate court may order the correction of a clerical error in abstract of judgment without a request from either party].) The December 4, 2023,

---

[6] We observe that Lomack voluntarily participated in alcohol abuse treatment. It was not a condition of his release.

abstract of judgment identifies a one-year enhancement term imposed pursuant to section 12022.7, subdivision (b) and a total prison term of five years.  However, the trial court imposed a five-year enhancement term and a total prison term of nine years.

## III.   DISPOSITION

The matter is remanded for the trial court to correct clerical errors in the abstract of judgment.  The clerk of the superior court is directed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation.  The judgment is otherwise affirmed.

_____
Langhorne Wilson, J.

I CONCUR:


_____
Hill, J.*

*Judge of the Superior Court of the County of San Mateo, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*People v. Lomack*  A169363

11

Humes, P.J., Concurring

I agree with the majority that the trial court's judgment should be affirmed.  But instead of reaching the merits of Lomack's equal-protection claim, I would reject it on the ground that Lomack forfeited it by not raising it in the trial court.  (See *People v. Dunley* (2016) 247 Cal.App.4th 1438, 1447.)  Below, Lomack claimed custody credits for the days he spent on pretrial release on the ground that during this time, he was "in custody" within the meaning of section 2900.5, subdivision (a).  He argued that being denied these credits violated his rights to due process, but he never argued that it violated his rights to equal protection on the basis that he was similarly situated to people on home detention under section 1203.018.

I recognize that this court has " 'discretion to address constitutional issues raised on appeal' where . . . 'the issue presented is "a pure question of law" turning on undisputed facts.' " (*People v. Heard* (2022) 83 Cal.App.5th 608, 626–627.)  But the record and arguments regarding the equal-protection claim are far too undeveloped to consider it fully, making the conclusion of forfeiture particularly appropriate.  The equal-protection analysis requires us to compare the conditions of Lomack's pretrial release to the conditions of a home-detention program under section 1203.018 in Marin County.  (See *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1089 (*Gerson*).)  The record is incomplete, however, as to both sets of conditions.

To begin with, we cannot be confident we know all the terms of Lomack's supervision.  The order releasing Lomack on his own recognizance

1

stated he was placed on "the curfew compliance program," "the continuous alcohol monitoring program," and "the GPS tracking (24/7) program." It also stated an "O.R. report" was filed and he was referred to the probation department for a "recommendation re: pretrial release monitoring program." But the record lacks any associated documentation, meaning we simply don't know what other terms and conditions were part of these programs or otherwise applied to Lomack.[1]

We also lack information about which, if any, "reasonable rules and regulations under which an electronic monitoring program pursuant to [section 1203.018] may operate" have been implemented in Marin County beyond the statute's minimum requirements. (§ 1203.018, subd. (d).) In opposing Lomack's request for more custody credits, the prosecution submitted a sample application for the county's "Parole Program." The prosecution stated that "[i]n Marin County, home detention is called parole," and pointed to several conditions of that program (as identified in the application) to which Lomack was not subject, including getting pre-approval to leave home for any reason other than going to work. This document might reflect some of the county-specific requirements for the section 1203.018 program, but the record provides no certainty on this point.

---

[1] The majority suggests that Lomack is not similarly situated to those on home detention under section 1203.018 because the trial court held a hearing on whether he violated his terms of release, whereas those detained under section 1203.018 are not entitled to such a hearing. The parties did not brief this issue, and, in any event, the record is inconclusive on whether Lomack had the right to such a hearing. For example, in informing Lomack of the terms of his release, the court told him, "If you have so much as a sip of alcohol and that device detects that, you'll be subject to being immediately arrested and brought back into custody."

Perhaps because the Attorney General failed to raise forfeiture as an issue, the majority glosses over forfeiture conventions and the gaps in the record to forge ahead and resolve the equal-protection claim on its substantive merits. I would decline to decide the claim's merits even if I thought that Lomack had adequately preserved the claim. Instead, I would remand to develop the factual record as to whether Lomack was similarly situated to those on home detention under section 1203.018 and, if so, whether there was a rational basis for his differential treatment. (See, e.g., *People v. Magana* (2022) 76 Cal.App.5th 310, 327.)

I am also not convinced by the majority's analysis. The majority seems to accept that *Gerson* was correctly decided, but it does not clearly explain why the case is not controlling. *Gerson* interpreted section 1203.018 to impose three rules on people on home detention under that statute: "(1) remaining within the interior premises of his or her residence during the hours designated by the correctional administrator; (2) admitting persons into his or her residence at any time for purposes of verifying compliance with the conditions of his or her detention; and (3) wearing a GPS device or other supervising device." (*Gerson, supra*, 80 Cal.App.5th at pp. 1089–1090; § 1203.018, subd. (d)(1)–(3).) *Gerson* concluded that because the defendant there had to follow the same three rules, his "home detention satisfied the statutory requirements," and he was thus similarly situated to those released under section 1203.018. (*Gerson*, at p. 1090.)

Lomack's pretrial release also satisfied these three requirements. Lomack was (1) ordered to "remain at [his] residence" during his curfew;

3

(2) required to submit to search and seizure of his person, residence, and other property under his control; and (3) "placed on the GPS tracking (24/7) program," requiring him to wear a GPS device and be monitored.  Under *Gerson*'s analysis, Lomack's release was therefore "at least as 'custodial, or restraining' as a statutory home detention program [under] section 1203.018."  (*Gerson*, *supra*, 80 Cal.App.5th at p. 1090.)

The majority nonetheless concludes that Lomack was *not* similarly situated to those on home detention under section 1203.018, based on a fourth requirement it derives from subdivision (h) of the statute.  This subdivision states that "[t]he correctional administrator may permit . . . participants to seek and retain employment in the community, attend psychological counseling sessions or educational or vocational training classes, or seek medical and dental assistance."  The majority assumes these are the *only* reasons that a person on home detention under section 1203.018 can ever leave the premises, but in my view the statute's text does not support this interpretation.  The statute requires participants to stay in their residence "during the hours designated by the correctional administrator." (§ 1203.018, subd. (d)(1).)  This plainly suggests that the correctional administrator can designate hours that participants are *not* required to stay in their residence.  To me, the more natural reading of the statute is that, *during the hours designated by the correctional administrator for the participant to be at home*, the participant may nonetheless be allowed to leave for the specified reasons.  If the statute intended to say, as the majority supposes, that participants can never leave their residences except for the reasons specified in subdivision (h), there was no need to refer to the designation of home-bound hours by the correctional administrator.

4

*Gerson* itself did not adopt the majority's interpretation. In *Gerson*, the defendant was deemed similarly situated to those on a section 1203.018 home detention even though he was allowed to leave the home "to do personal errands" and later to "spend three nights a week at his girlfriend's home." (*Gerson*, *supra*, 80 Cal.App.5th at p. 1087, fn. 17.) Neither of these activities is within the ambit of those identified in section 1203.018, subdivision (h), but this did not prevent *Gerson* from concluding that the defendant was similarly situated to those on a section 1203.018 home detention. (*Gerson*, at p. 1090.) Since the majority appears to accept *Gerson*'s analysis, it seems to be holding that defendants may be similarly situated to those on home detention under section 1203.018 if they are allowed to leave their home for *some* limited set of reasons unspecified by the statute. But how many are too many, or too different from subdivision (h)'s reasons, to render a defendant not similarly situated is left to pure guesswork.

In short, I believe that Lomack forfeited the equal-protection claim and this court should not decide the claim's merits, much less in the manner the majority advances.

_____

Humes, P.J.

*People v. Lomack*  A169363